

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 09, 2022.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 21-51507-CAG |
| MICHAEL ZEPH ROUQUETTE AND, ETTA DAWN ROUQUETTE, | § § § § | CHAPTER 7 |
| Debtors. | § | |

| | | |
|---|---|---|
| JOHN PATRICK LOWE CHAPTER 7 TRUSTEE, | § § | |
| Plaintiff. | § | |
| v. | § | ADVERSARY NO. 22-05033-CAG |
| INTERNAL REVENUE SERVICE OF UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

**ORDER GRANTING PLAINTIFF JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT INTERNAL REVENUE SERVICE (ECF NO. 12)[1]**

Came on to be considered the above-numbered adversary proceeding and, in particular, Plaintiff John Patrick Lowe Chapter 7 Trustee's ("Trustee") Motion for Summary Judgment

---

[1] "ECF" denotes the electronic case filing number in Adversary Proceeding 22-05033-cag.

against Internal Revenue Service, United States of America ("Defendant") (ECF No.12) ("Motion for Summary Judgment") filed on August 19, 2022, the parties' responses, and supporting evidence. For the reasons herein, the Court finds that Trustee's Motion for Summary Judgment should be GRANTED.[2]

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This proceeding involves the Chapter 7 Trustee's assertion of a cause of action under 11 U.S.C. § 548.[3] Trustee asserts that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O). Trustee has consented to this Court's jurisdiction to enter a final order. (ECF No. 7). Defendant has consented to this Court's jurisdiction to enter a final order. (ECF No. 9). As such, the Court finds that it has the requisite statutory authority to enter a final order in this proceeding.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Federal Rule of Bankruptcy Procedure 7056 applies Federal Rules of Civil Procedure 56 to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-

---

[2] The United States filed its Response to Trustee's Motion for Summary Judgment and its Cross-Motion for Summary Judgment on August 25, 2022. (ECF No. 15) ("Cross-Motion"). The United States' Cross-Motion is denied for the reasons stated in this Order. An order denying the United States' Cross-Motion will be entered separately.
[3] Unless otherwise noted, all references are to Tile 11, 11 U.S.C. §_ *et seq.*

2

moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

When the movant has produced competent and sufficient evidence, "its opponent must do more than simply show there is some metaphysical doubt as to the material facts" for the court to deny summary judgment. *Id.* The "adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)) (internal quotations omitted). The inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Conversely, if the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

### FACTUAL AND PROCEDURAL BACKGROUND

Trustee seeks a determination that Debtors' prepetition payment of their estimated taxes constitutes a fraudulent transfer under § 548(a)(1)(B). Trustee alleges in his First Amended Complaint the following operative facts:

Debtors made five transfers to the Defendant in the six months before the chapter 7 petition was filed. All five transfers were for estimated tax payments for the Debtors' year 2021 federal income tax liability. Trustee argues that the transfers removed assets from the bankruptcy estate that could have paid claims of the Debtors' bankruptcy estate because Debtors' 2021 tax liability was not yet due on the date of Debtors' chapter 7 petition. Therefore, the effect of the transfers was to reduce estate assets and not to reduce the Debtors' liabilities.

Trustee argues the transfers are constructively fraudulent transfers because the transfers total $26,000.00 for an estimated tax liability of $8,552.00. As such, the effect of the transfers was to deplete the Debtors' assets by $26,000.00 and to reduce Debtors' liabilities by only $8,552.00. Moreover, Trustee argues the remainder—$17,448.00—was a deposit and a transfer for no consideration. Trustee alleges the Debtors transferred the money to Defendant, making that money unavailable to pay allowed claims in the case.

Defendant filed a proof of claim in the amount of $232,283.86 in Debtors' bankruptcy case on February 4, 2022. Defendant filed its Answer on May 12, 2022, admitting, for the most part, Trustee's allegations in the First Amended Complaint but denying that the estimated tax payments were fraudulent transfers.

STIPULATION OF FACTS

The parties entered into a Joint Stipulation of Facts. (ECF No. 11). The Joint Stipulation stipulates to the following facts for purposes of summary judgment:

1. Debtors Michael and Etta Dawn Rouquette filed a chapter 7 bankruptcy petition on December 8, 2021.

2. Between June 15, 2021 and December 6, 2021, Debtors made estimated tax deposits totaling $26,000.00 toward their expected 2021 tax year Form 1040 individual income tax liability. Specifically, the Debtors made deposits of:

   a. $2,000.00 on or about June 15, 2021;

   b. $4,000.00 on or about July 15, 2021;

   c. $5,000.00 on or about October 15, 2021;

   d. $4,995.00 on or about December 6, 2021; and

   e. $10,005.00 on or about December 6, 2021.

3. All five transfers were made from the Debtors' account xxxx-8169 at Randolph Brooks Federal Credit Union containing the Debtors' property.

4. Based on Debtors representations in their bankruptcy petition, Debtors were insolvent at the time of the transfers.

5. 26 U.S.C. § 6654(d) requires estimated tax payments in the lesser of 90% of the current year's (2021) tax liability or 100% of the previous year's liability. The Debtors' previous year's liability, for the year 2020, was $8,552.00.

6. As of the date of the Stipulation, Debtors have not yet filed their 2021 return. Their extension request shows an estimated tax liability of $21,000. This estimated tax liability is supported by reported earnings, non-employee compensation, and unemployment income totaling $177,443.

## DISCUSSION

Trustee filed his Motion for Summary Judgment on August 19, 2022. (ECF No. 12). Trustee seeks relief on the following causes of action:

### FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(a)(1)(B)

Trustee argues that he is entitled to judgment on Count I of the First Amended Complaint, which alleges a fraudulent transfer to the IRS that is avoidable under 11 U.S.C. § 548. Trustee's First Amended Complaint against the Internal Revenue Service seeks to avoid and recover five transfers the Debtors made in the year 2021 towards an estimated year 2021 federal income tax liability as constructively fraudulent transfers under §§ 548 and 550.[4] The First Amended Complaint in Count II also seeks the disallowance of the IRS's proof of claim in the case because,

---

[4] Section 550 states in relevant part that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, ..."

5

being the transferee of avoidable transfers which have not been returned to the estates, the IRS's claim should be disallowed under § 502(d).[5]

> Section 548(a)(1)(B) provides in relevant part that:
> (1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred[.]

"'Section 548 and fraudulent transfer law generally attempt to protect creditors from transactions which are designed, or have the effect, of unfairly draining the pool of assets available to satisfy creditors' claims, or which dilute legitimate creditor claims at the expense of false or lesser claims.'" ***Redmond et al v. SpiritBank (In re Brooke Corp.)***, 541 B.R. 492, 507 (Bankr. D. Kan. 2015) (quoting 5 COLLIER ON BANKRUPTCY, ¶ 548.01[1][a] at 548–11 (Alan N. Resnick & Henry J. Sommer, eds. in-chief, 16th ed. 2015)). "Section 548 covers two classes of transactions. 'The first class of improper transactions—those made with actual intent—have been condemned for over 450 years.' In the second class, the 'unfairness stems from a disparity of exchange coupled with the debtor's lack of other assets. . . . In these cases, fraud is presumed.'" ***Id***. (quoting 5 COLLIER ON BANKRUPTCY, ¶ 548.01 at 548–10).

The First Amended Complaint seeks the avoidance and recovery of five transfers, in the total amount of $26,000.00, from the Debtors to the Defendant. Trustee seeks the avoidance of the transfers as constructively fraudulent transfers under §§ 548 and 550.

To obtain the relief he seeks, Trustee must prove that:

---

[5] (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

6

  a. the transfers were the transfers of an interest of the Debtors in property;

  b. the transfers were made within two years before the date of the filing of the petition;

  c. the Debtors received less than a reasonably equivalent value in exchange for the transfers; and

  d. the Debtors were insolvent or became insolvent as a result of the transfers.

§ 548(a)(l)(B)(i) and (ii).

  The Debtors were insolvent when the case was commenced on December 8, 2021. Their petition discloses assets of $545,260.14. The statutory definition of insolvency, however, excludes exempt assets. § 101(32). After deducting assets claimed as exempt, only $47,531.14 in assets remained as non-exempt assets of the Debtors' estate. Debtors had stated liabilities of $823,671.54 on their petition date. Thus, Debtors were insolvent when the case was commenced. The parties stipulate the Debtors made transfers of their property within two years of the petition date. As such, the Joint Stipulations prove three of the four elements the Trustee must prove to obtain avoidance of the transfers. The only remaining element Trustee must prove is whether the Debtors received less than a reasonably equivalent value in exchange for the five transfers. § 548(a)(l)(B)(i).

  The Bankruptcy Code does not define "reasonably equivalent value," as used in §§ 548(a)(1)(B)(i). While § 548(d)(2)(A) does define "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor," courts have been left to judicially define what constitutes "reasonably equivalent value" for purposes of § 548. To determine whether reasonably equivalent value was provided, many courts have adopted a two-step process.

  First, a court determines whether the debtor received an economic benefit at the time of the transfers or obligations. *See* **Butler Aviation Int'l, Inc. v. Whyte (*In re Fairchild Aircraft***

*Corp.*), 6 F.3d 1119, 1127 (5th Cir.1993); **Brandt v. Charter Airlines, LLC (*In re Equipment Acquisition, Inc.*)**, 511 B.R. 527, 534 (Bankr. N.D. Ill. 2014). Second, the value provided must be "reasonably equivalent" to what the debtor received. *See* **Think3 Litigation Trust v. Zuccarello et al. (*In re Think3, Inc.*)**, 529 B.R. 147, 200 (Bankr. W.D. Tex. 2015); *see also* **Abramoff v. Life Ins. Co. of Georgia (*In re Abramoff*)**, 92 B.R. 698, 703–04 (Bankr. W.D. Tex. 1988). This two-step inquiry considers the value of what was transferred and what was received at the time of the transfer. *See* **Gutierrez v. Lomas Mortgage, et al. (*In re Gutierrez*)**, 160 B.R. 788, 790 (Bankr. W.D. Tex. 1993) (finding that value must be determined on the date of the transfer).

26 U.S.C. § 6654(d) requires estimated tax payments in the lesser of 90% of the current year's (Form 1040 2021) tax liability or 100% of the previous year's liability to be paid for an estimated tax liability. Trustee posits that Debtors' failure to make a short year election for tax purposes under 26 U.S.C. § 1398(d) is fatal to the IRS's assertion that the estimated tax payments are not fraudulent transfers. 26 U.S.C. § 1398(d) states:

> (d) Taxable year of debtors –
> (1) General Rule – Except as provided in paragraph (2), the taxable year for the debtor shall be determined without regard to the case under title 11 of the United States Code to which this section applies.
> (2) Election to terminate debtor's year when case commences
> (A) In general – Notwithstanding section 442, the debtor may (without the approval of the Secretary) elect to treat the debtor's taxable year which includes the commencement date as 2 taxable years–
> (i) the first of which ends on the day before the commencement date, and
> (ii) the second of which begins on the commencement date.

Trustee notes that Debtors did not make a short year election for the year 2021. That is, Debtors did not make an election to break the calendar year 2021 into two tax years, the first beginning January 1, 2021 and ending December 7, 2021 with the second beginning on December

8

8, 2021 and ending on December 31, 2021. As such, because Debtors did not make a short year election, no part of the year 2021 Form 1040 liability may be paid from assets of the estates. 26 U.S.C. § 1398(d)(2). The court in *In re Turboff* described the effect of not making a short year election under 26 U.S.C. § 1398(d):

> If the Debtor does not make the election, no part of the debtor's tax liability from the year in which the bankruptcy case commences is collectible from the estate, but is collectible directly from the individual debtor. Thus, the taxable year of the debtor is determined without regard to the bankruptcy proceeding. . .

93 B.R. 523, 526 (Bankr. S.D. Tex. 1988).

Trustee argues that, as a result of Debtors not making a short year election, the Debtors' chapter 7 estate has no IRS tax liability for 2021 individual income taxes. As such, Trustee argues that because Debtors' estate has no tax liability for 2021, the estimated tax payments totaling $26,000 are not the reasonably equivalent value of zero. Moreover, where there is no short year election, there is no "claim" against the estate. *Turboff*, 93 B.R. at 525. Where there is no "claim" there is no "debt" within the meaning of § 101(12).[6]

In the alternative, Trustee argues that the five transfers (the estimated tax payments) were less than reasonably equivalent value assuming there was no short year election to apply. This Court previously considered whether the application of estimated tax payments to a debtors' estimated tax liability was a fraudulent transfer. *Satija v. United States (In re Colliau)*, 584 B.R. 812 (Bankr. W.D. Tex. 2017). The facts in *Colliau* are analogous to the facts in the case at bar because the *Colliau* debtors made a large tax payment of $28,000 on their estimated Form 1040 individual income tax liability one day prior to filing a chapter 7 petition. *Id*. at 813. An important distinction in *Colliau* is that those debtors filed their own summary judgment motion with an

---

[6] The term "debt" means liability on a claim. § 101(12).

9

affidavit disputing an intent to delay, defraud, or defraud a creditor. *Id*. at 814. The issue presented in *Colliau* was whether:

> an estimated tax payment [is] a payment of "present or antecedent debt," or is it a payment of future debt? If an estimated tax payment is a payment of an antecedent or present debt, then the transfer in satisfaction of the tax debt would be a dollar-for-dollar exchange, and would be for a reasonably equivalent value. If an estimated tax payment is a payment of future debt, then it would not meet the definition of value, and could be avoidable as a fraudulent transfer.

*Colliau* at 815.

The Court in *Colliau* did not determine the amount due on the date of each transfer (the estimated tax payments required to be made quarterly) and concluded that "since neither party addressed the calculation of the actual amount due on the date the transfer was made, discretion will be exercised to allow the parties to address the fact of what was actually due on those dates." *Id*. at 816 (footnotes omitted). The Court observed that one way to determine reasonably equivalent value was to prorate the prior year's tax liability on a quarterly basis and compare that amount to the amount of each estimated tax payment. If the estimated tax payment was roughly the same amount as the prorated amount of the prior year's tax, then there would be a dollar-for-dollar payment and the estimated tax payments would be for reasonably equivalent value. *Id*. at 815-16. Trustee argues that using last year's tax liability or 90% for the tax year at issue would still result in Debtors' tax payments exceeding in total the amount of the tax liability due. Therefore, Trustee argues that any payments exceeding the known tax payments are constructively fraudulent and should be avoided.[7]

---

[7] According to Trustee, Debtors filed their 2021 Form 1040 individual income tax return after the Complaint was filed indicating a tax liability of $21,000.00. Defendant states that Debtors filed their 2021 Form 1040 individual tax return on July 22, 2022, reflecting a tax due of $23,177, and claiming an overpayment of $4,112. The $4,112.00 refund was forwarded to Trustee. (Cross-Motion at 3) (ECF No. 56, ¶ 3 in Case No. 21-51507).

Trustee argues that if no short year election applied, then Debtors would have had to make tax deposits of the lesser of the two amounts—the $8,552.00 for tax year 2020 or the amount of $21,000 for tax year 2021. Because $8,552 is the lesser amount, Debtors would have needed to make quarterly tax deposits of $2,138.00 (25% x $8,552.00). Further, the dates for the tax deposits are April 15, June 15, and September 15 of 2021; and January 15, 2022. *See Colliau* at 815. (observing that to determine if there was reasonably equivalent value, a court should compare what was the amount due on each quarterly tax payment versus what was the aggregate amount of the tax deposits made).

Trustee then compared what was paid and what was due on the due date of each quarterly tax deposit. (Motion for Summary Judgment at pp. 8–11). Trustee calculated that, assuming that each payment Debtors made was applied when each quarterly tax deposit was due, the transfers made would have paid the April and June 2021 tax deposits then due and would have been for antecedent debts. (*Id*. at 9). Thereafter, a remaining amount of $1,724.00 from the July 15, 2021, transfer and the subsequent October 15, 2021 transfer resulted in tax deposits in excess of the aggregate amount of the tax deposits due, so Trustee argues that paying more than what was actually due is not reasonably equivalent value. (*Id*.). Finally, Trustee argues that when the December 6, 2021 tax payments of $4.995.00 and $10,005.00 were made, no estimated tax deposit was currently due. *See* § 548(d)(2)(A) (requiring that a payment must be made on an actual or antecedent debt to constitute value). Therefore, Trustee asks in the alternative that the Court find:

> As the trustee has said in his amended complaint, even if the year 2021 tax liability might be paid from the estates, the Service got $26,000.00 and it was overpaid either way. It either received $26,000.00 to pay the equivalent of 100% of the year 2020 liability of $8,552.00, an overpayment of $17,448.00, or it received $26,000.00 for estimated payments of 90% of the estimated year 2021 liability. The estimated year 2021 liability was zero. 90% of zero is zero. It [the IRS] still holds more than the estimated liability.

11

> The Trustee moves that the July 15, 2021 transfer of $4,000.00, the October 15, 2021 transfer of $5,000.00 and the 2 December 6, 2021 transfers of $4,995.00 and $10,005.00 all be avoided and recovered, a total of $24,000.00.

Motion for Summary Judgment at 10–11.

Defendant argues that when Debtors made their 2021 tax deposits, they received value by securing their 2021 individual federal income tax liability (Form 1040) to the extent of their deposits. *See* **In re Middendorf**, 381 B.R. 774, 778 (Bankr. D. Kan. 2008) ("The Trustee has no claim under § 548 to settle with the IRS."); *see also* **In re Simmons**, 124 B.R. 606, 608 (Bankr. M.D. Fla. 1991) ("The debtor received a reasonably equivalent value in exchange for his early payment of taxes, that is, a corresponding dollar-for-dollar reduction in his tax obligation."); **In re Weir**, No. 85-40456-7, 1990 WL 63072, at *4 (Bankr. D. Kan. Apr. 3, 1990) ("In return for his [estimated tax] payment, the government gave [the debtor] credit, dollar for dollar, against [the debtor's] potential tax liability and the right to a refund if he ultimately owed less."). Defendant argues a total of $23,177 of the estimated payments were applied to Debtors' 2021 tax liability and the overpayment of $4,112 (which included withholding credits) was refunded to Debtors.

Further, Defendant argues that under **Middendorf**, "[t]he Trustee may no more recover the tax pre-payment as a fraudulent transfer than he could recover pre-petition wage withholdings under the same theory. There is nothing nefarious about paying estimated tax liability out of the very income to be taxed." **Middendorf**, 381 B.R. at 778. *See also* **Simmons**, 124 B.R. at 608 (rejecting as a matter of law the trustee's §§ 548(a)(1)(A) and (a)(1)(B) claim to a pre-petition year tax overpayment the taxpayer had elected to be applied to his subsequent, post-petition, liability).

Defendant maintains that Trustee's argument that Debtors were only required to make estimated tax deposits of $8,552.00 is misplaced. 26 U.S.C. § 6654(d) provides a safe harbor to avoid failure to deposit penalties. *See* **Mendes v. C.I.R.**, 121 T.C. 308, 325–26 (2003) ("'Safe

12

harbor' also is an apt description of the identical preceding-year-return rule applicable to individuals."). Moreover, Defendant maintains that Debtors' 2021 tax year liability of $23,177 and Debtors' statutorily required estimated deposits (here $8,552.00) are not necessarily indicative of actual tax liability. *See id*. at 324 ("Estimated tax liability is based upon the taxpayer's tax liability as stated on the original [prior year] tax return as filed, and not upon the notice of deficiency amount or the ultimate tax liability.")

In addition, Defendant asserts that Trustee's reliance on ***Colliau*** is similarly misplaced. Defendant states that ***Colliau*** recognizes that taxes are due quarterly. ***Colliau***, 584 B.R. at 815 ("According to the Internal Revenue Code, the 'due dates' for payment of 25% of the 'required annual payment' are: April 15, June, 15, September 15, and January 15 (of the following taxable year)."). Therefore, IRS notes that it is self-evident that if a payment is 'due' under the terms of a statute, it is a present debt. Further, the IRS alleges that ***Colliau*** left unresolved how to determine the amount due at the time the deposits were made and employs a different analysis than what Trustee suggests. *Id*. at 815–16. Defendant notes the final tax deposits in this case were made 25 days before the end of the tax year. As such, Defendant presumes that a ratio of 339 over 365 can be used to apportion the tax payments ($27,302, including withholding) between the period between (and including) January 1, 2021 and December 6, 2021. Doing so attributes $25,357.20 of the payments to earnings up to, and including, the day the last payments were sent. Therefore, using these same factors, $1,944.80 of the estimated tax payments are attributable to Debtors' earnings after the last estimated payment was made. As the Trustee has already received $4,112 from the total tax payments made for 2021, his claim that Debtors received no value for their estimated tax payments is meritless. Thus, even under a ***Colliau*** analysis, IRS argues $25,357.20 of the estimated tax payments are not subject to turnover. In sum, Defendant argues that federal

income tax is pay-as-you-go tax. As such, the taxpayer must pay the tax as the taxpayer earns income or receives income during the year.

Additionally, Defendant asserts that the payments should be treated as administrative expense payments made on behalf of the bankruptcy estate. The Defendant relies on *In re Affirmative Ins. Holdings Inc.*, 620 B.R. 73, 75 (D. Del. 2020), *appeal dismissed sub nom. In re Affirmative Ins.*, No. 20-2974, 2021 WL 4520984 (3d Cir. Sept. 8, 2021). The issue in *Affirmative Insurance Holdings* was the treatment of a chapter 7 post-BAPCPA federal "income" tax liability that became due after the bankruptcy filing date. The district court found absent a short year election; an income tax liability becomes due on the last day of the tax year. 620 B.R. at 84. Thus, Defendant reasons that when the tax year closes after the petition date, the tax is incurred by the estate post-petition, and it is entitled to priority as an administrative expense. (ECF No. 15 at 6).

The Trustee's Reply asserts that the proper analysis is to consider when Debtors made their estimated tax payments (June-December 2021) as compared to when Debtors filed their chapter 7 petition (December 8, 2021). (ECF No. 17 at 2). Moreover, Debtors did not file their 2021 individual income tax return until July 2022. Further, Trustee argues 26 U.S.C. § 6654 applies because the statute requires the taxpayer to make estimated tax payments in the amount of the lesser of (a) 100% of the previous year's tax liability or (b) 90% of the current year's estimated tax liability. The first figure was $8,552.00, which is 100% of Debtors' 2020 individual income tax liability. The second figure was $18,900.00 (90% of $21,000.00). The lesser of those two figures is the first, $8,552.00. Debtors transferred over three times that amount ($26,000.00). As such, Trustee argues the estimated tax payments were constructively fraudulent transfers. "If an estimated tax payment is a payment of a future debt, then it would not meet the definition of value, and could be avoidable as a fraudulent transfer." *Colliau*, 584

14

B.R. at 815. As Trustee points out, Debtors' failure to make a short year election is fatal to Defendant's arguments that the tax payments are 'pay as you go' credits against Debtors' estimated tax liability. Because Debtors failed to make a short year election, the estate is not liable for the estimated tax liability, and there is no claim against the estate. ***Turboff***, 93 B.R. at 525-6.

Trustee further argues that Defendant's reliance on ***Affirmative Ins. Holdings, Inc.*** is unavailing. Trustee notes that the debtor in that case was an entity, and not an individual. 620 B.R. at 75. Debtors in the case at bar are individuals. 26 U.S.C. § 1398 governs tax issues for individual debtors in chapter 7 and 11 cases.[8] See ***In re Knobel***, 167 B.R. 436, 443 n. 17 (Bankr. W.D. Tex. 1994) ("In corporate and partnership cases under chapter 7 or chapter 11 and individual chapter 13 cases a separate taxable estate, apart from the debtor, is not deemed to arise."). Thus, the debtor in ***Affirmative Insurance Holdings*** did not have the option to make a short year election, nor did a separate taxable estate exist. Trustee also argues that Debtors' estate has no administrative tax liability because there have been no capital transactions and the chapter 7 estate does not have any income. Therefore, any overpayment cannot be applied because there is no administrative tax liability.

Finally, the Court finds the cases cited by Defendant unpersuasive. ***Middendorf*** involved debtors paying estimated pre-petition taxes for their individual income tax liability attributable to capital gains on the sale of stocks. 381 B.R. at 776. The ***Middendorf*** chapter 7 trustee asserted that the pre-petition tax payments were both a preference under § 547 and fraudulent transfer under § 548. ***Id***. The chapter 7 trustee and IRS entered into an agreement to resolve the disposition of the funds. ***Id***. Debtors objected to the proposed settlement because, *inter alia*, the

---

[8] 26 U.S.C. § 1398(a) provides that "[e]xcept as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States Code in which the debtor is an individual."

debtors alleged that the payments were not fraudulent transfers. *Id*. The court found that the chapter 7 trustee provided no proof or evidence regarding the elements under § 548. *Id*. at 778. As to the issue regarding reasonably equivalent value, the court noted that:

> There is nothing nefarious about paying estimated tax liability out of the very income to be taxed. In this case, the $22,500.00 estimated tax pre-payment was a reasonable deposit based on the 2005 tax rate for capital gains. Debtors could not know at the time of the pre-payment their deductions would be such as to significantly reduce their actual tax liability a year later. Further, when the tax liability was determined to be less than the pre-payment, the excess was returned as a tax refund, the pre-petition portion of which becomes property of the Estate. The Trustee could not have recovered the tax pre-payment before the final tax liability was assessed.

*Id.* (footnote omitted).

*Middendorf* is factually and legally different for at least two reasons. First, the issue there involved unanticipated capital gains taxes related to a stock sale from which the tax consequences were unpredictable. Here, Debtors had the benefit of knowing what their 2020 individual tax liability was. Second, there was no short year election nor did the chapter 7 trustee argue that a short election applied.

*Simmons* involved a tax overpayment in which the debtors wanted to apply the overpayment to their next year's tax liability. 124 B.R. at 607. Debtors did not make an election pursuant to 26 U.S.C. § 1398(d)(2)(A). *Id*. Without any explanation or analysis of 26 U.S.C. § 1398, the court simply stated "The debtor received a reasonably equivalent value in exchange for his early payment of taxes, that is, a corresponding dollar-for-dollar reduction in his tax obligation. For these reasons plaintiff's action pursuant to 11 U.S.C. §§ 548(a)(2)(A) and (B)(i) fails as a matter of law." *Id*. at 608. The Court does not find this analysis persuasive or dispositive of the issues in this case.

*Weir*, in the Court's judgment, is instructive. No. 85-40456-7, 1990 WL 63072 (Bankr. D. Kan. Apr. 3, 1990). *Weir* involved a debtor selling stock pre-petition, resulting in a significant capital gain of $150,000.00. *Id*. at *1. Debtor, on the advice of counsel, made an estimated tax payment to the IRS to avoid any penalty for underestimating his 1985 tax liability. *Id*. Roughly a month later in May 1985, debtor filed a chapter 7 petition. *Id*. Debtor did not make an election under 26 U.S.C. § 1398(d). *Id*. The chapter 7 trustee filed a complaint seeking various claims for relief, including that the estimated tax payment was a fraudulent transfer under § 548. *Id*. at *2. The court noted that by not making the election, "no part of the debtor's tax liability from the year in which the bankruptcy case commences is collectible from the estate, but is collectible directly from the individual debtor." *Id*. Similar to the case at bar, the chapter 7 trustee argued that the estimated tax deposit was a fraudulent transfer because the debtor received less than reasonably equivalent value. *Id*. at *4. The *Weir* court observed that:

> when the debtor sold his stock at a profit of $150,000, he incurred a significant potential tax liability. In return for his payment, the government gave him credit, dollar for dollar, against that potential tax liability and the right to a refund if he ultimately owed less. The debtor gained the certainty that his potential capital gain tax liability was paid but gave up the right to use the $27,000 for about one year.

*Id*.

The chapter 7 trustee argued that, because the debtor had not made a short election, the estate had no tax liability and that there was not reasonably equivalent value for the $27,000 estimated tax payment. The court made three observations regarding the chapter 7 trustee's argument:

> If the court were to accept this argument, it would have to hold all estimated tax payments and taxes withheld from wages satisfied the less than reasonably equivalent value test of § 548(a)(2)(A) in the year that bankruptcy is filed, and consequently, hold all such payments to be fraudulent conveyances upon proof of the debtor's insolvency at the time of the transfer. The court will not do so.

*** 

17

> The trustee also asserts here that the debtor's failure to elect under IRC § 1398 retroactively makes his prepetition payment one for no value since the government has no prepetition claim against his bankruptcy estate for 1985 income tax.
>
> ***
>
> The court does not believe a statute passed to allow debtors to benefit by funneling tax liability through their bankruptcy estates before the liability passes to them should be construed to penalize them if they forego the benefit.

*Weir* at *4. The *Weir* court's observations are well-suited to the context of the case.

But *Weir* is factually different than the case at bar because *Weir* involved a stock sale and the nearly simultaneous payment of estimated tax payment for the potential increase of tax liability. Second, *Weir* did not involve the issue of an unfiled tax return. Third, unlike *Weir*, Debtors in the case at bar did not intervene or contest that their estate was insolvent. Debtors here did not create a factual dispute by appearing and offering an explanation as the nature of why the estimated tax payments were not fraudulent transfers. Fourth, there is no dispute at the time Debtors made their estimated tax payments, Debtors were aware that the previous year's liability was significantly less than the aggregate amount of the tax payments.

The *Weir* court placed great emphasis on the unfairness of a debtor not electing to make the 26 U.S.C. § 1398 election and Congress's purported non-intent to penalize debtors who then file bankruptcy. *Id*. at *4. This conclusion, in this Court's judgment, ignores that 26 U.S.C. § 1398(a) specifically states the tax consequences for individual debtors who file either a chapter 7 or 11 petition. Finally, the *Weir* court concluded that the value received by the debtor satisfies the "reasonably equivalent value" test of § 548(a)(2)(A) although his bankruptcy estate might not have received the value." *Id*. The Court does not agree with this analysis and finds that under this rationale, debtors would withhold paying their estimated tax liability, not make a short election,

and deprive the estate of assets that would be liabilities of the estate as opposed to paying a tax claim that the estate would not be liable.

Although the Court does find that the transfers at issue were fraudulent transfers, a word of caution is necessary. The Court holds that this Order is limited to the facts of this case and should not be construed to hold that every estimated tax payment without a debtor making a 26 U.S.C. § 1398 election is a basis for a fraudulent transfer. Notably, the Debtors here did not contest the basis for the payments, nor did they otherwise appear in this adversary proceeding. As noted in this Order, the timing of the payments, coupled with the prior year's tax liability, plus the fact that the tax return was not filed until three months after the due date, raise serious questions as to Debtors' intentions.

## CONCLUSION

The Court, having reviewed the facts of the case and considered the arguments of the parties, finds that it is ORDERED, ADJUDGED, and DECREED that:

Trustee has proven all four elements of 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii) and that there is no material issue of facts as to:

    a.     the five transfers were the transfers of an interest of the Debtors in property;

    b.     the transfers were made within two years before the date of the filing of the petition;

    c.     the Debtors received less than a reasonably equivalent value in exchange for the transfers; and

    d.     the Debtors were insolvent or became insolvent as a result of the transfers.

As such, the five transfers in the total amount of $26,000 are voidable under § 548(a)(1)(B).

Defendant is ORDERED to turn over the remaining balance of the voidable transfers of $21,888.00 ($26,000-$4,112) within sixty days of entry of a judgment.

The Defendant is divested of all right, title, and interest in the avoided transfers.

The avoided transfers are preserved for the benefit of the estates but only with respect to property of the bankruptcy estate.

Should Defendant fail to turn over the balance of the avoided transfers within sixty days of entry of a judgment, then Defendant's claim is disallowed under 11 U.S.C. § 502(d).

IT IS THEREFORE ORDERED that Plaintiff John Patrick Lowe Chapter 7 Trustee's Motion for Summary Judgment against Defendant Internal Revenue Service (ECF No. 12) is GRANTED as to Counts I and II.

Further, it is ORDERED that Trustee may recover the transfers under 11 U.S.C. § 550.

Trustee is ORDERED to prepare a form of Judgment consistent with the Court's Order within ten days of entry of this Order.

All other relief requested is DENIED.

# # #